WISCONSIN MALTING COMPANY, Appellant, vs. CITY OF
MANITOWOC, Respondent.

*April 27—September 14, 1937.*

For the appellant there were briefs by *Hougen & Brady* and *Nash & Nash,* all of Manitowoc, and oral argument by *A. L. Hougen* and *A. L. Nash.*

For the respondent there were briefs by *Edward Meyer,* city attorney, and *Edward L. Kelley* of Madison and *C. E. Teitgen* of Manitowoc of counsel, and oral argument by *Mr. Teitgen* and *Mr. Kelley.*

The following opinion was filed June 21, 1937:

MARTIN, J.   After the assessment roll for the year 1933 was prepared and presented to the board of review, appellant filed with the board objections to its assessment, claiming

that its assessment was excessive. A hearing was had before the board of review, commencing on January 16, 1934, at which evidence was offered on behalf of the taxpayer in support of its objections to the assessment, and on behalf of the city to sustain the assessment. After the evidence was received, the board of review examined the premises, and then found and determined that the valuation fixed by the assessor was the full value which could ordinarily be obtained for the property at private sale on May 1, 1933, and sustained the assessment. The total tax assessed against appellant's property in the sum of $8,358.20 was paid by it, under protest, on March 9, 1934.

This action was brought under sec. 74.73, Stats., which, so far as is here material, provides:

"(1) Any person aggrieved by the levy and collection of any unlawful tax assessed against him may file a claim therefor against the town, city, or village, whether incorporated under general law or special charter, which collected such tax in the manner prescribed by law for filing claims in other cases, and if it shall appear that the tax for which such claim was filed or any part thereof is unlawful and that all conditions prescribed by law for the recovery of illegal taxes have been complied with, the proper town board, village board, or common council of any city, whether incorporated under general law or special charter, may allow and the proper town, city, or village treasurer shall pay such person the amount of such claim found to be illegal and excessive. If any town, city, or village shall fail or refuse to allow such claim, the claimant may have and maintain an action against the same for the recovery of all money so unlawfully levied and collected of him. Every such claim shall be filed; and every action to recover any money so paid shall be brought within one year after such payment and not thereafter."

Among the other findings the trial court found:

"That the plaintiff purchased the above-described real estate [real estate in question] in July, 1933, for the sum of $400,000; that the officers of the plaintiff corporation

were at the time experienced maltsters; that said malting property, being the real estate hereinbefore described, was purchased as an investment.

"That upon the purchase of the above-described real estate, the plaintiff took out and carried insurance on the improvements located upon the premises, consisting of buildings, in the sum of $375,000.

"That the full value which could ordinarily be obtained. for said real estate at private sale on May 1, 1933, was the sum fixed by the assessor aforesaid and approved and confirmed by the board of review.

"That there is no evidence of unfairness or unjust discrimination. That there is no evidence that the board acted arbitrarily or dishonestly. That the record discloses that competent evidence was taken and received by the board of review which supports the assessor's assessment and the determination of the board of review sustaining said assessment."

Sec. 70.32 (1), Stats., as to the assessment of real estate, provides:

"(1) Real property shall be valued by the assessor from actual view or from the best information that the assessor can practically obtain, at the *full value which could ordinarily be obtained therefor at private sale.* In determining the value the assessor shall consider, as to each piece, its advantage or disadvantage of location," etc.

The assessment is made as of May 1st, each year. Sec. 70.10, Stats.

The rule in this state is that the assessor's valuation is *prima facie* correct, and will not be set aside in the absence of evidence showing it to be incorrect. *Worthington Pump & M. Corp. v. Cudahy,* 205 Wis. 227, 229, 237 N. W. 140, and cases cited.

In *State ex rel. Kimberly-Clark Co. v. Williams,* 160 Wis. 648, 652, 152 N. W. 450, the court said:

"If in any reasonable view of it the evidence taken furnished a substantial basis for the action of the board, and it is not shown that it acted arbitrarily or dishonestly, its de-

cision will not be disturbed by the courts. *State ex rel. Althen v. Klein,* 157 Wis. 308, 147 N. W. 373, and cases cited."

"If a board of review does not act arbitrarily or dishonestly and the evidence presented before it is sufficient to furnish any substantial basis for the valuation found by the board, its decision will not be disturbed. . . . The presumptions are all in favor of the rightful action of such board." *State ex rel. Pierce v. Jodon,* 182 Wis. 645, 648, 197 N. W. 189.

It appears that the real estate in question was formerly owned by the Manitowoc Malting Company. The malting plant was built by that company in 1900, and operated as a malting plant until 1922. Between 1922 and 1930, it was operated as a grain storage business. In 1930, it resumed operations for a time as a malting plant. In 1928, the real estate was sold for $160,000, and in July, 1933, the Kurth Malting Company of Manitowoc purchased the real estate and plant for $400,000. The plant has been in continuous operation as a malting plant since June of 1933. The name "Kurth Malting Company of Manitowoc" has been changed to "Wisconsin Malting Company."

Mr. Christ Kurth testified that he was trying to buy this plant since 1928; that it was one of the few plants that was for sale; that in July, 1933, he considered the plant worth $400,000 as an investment; that the legalizing of two and one-half per cent beer in March of 1933, and the repeal of prohibition in July of 1933, "created a tremendous demand for malt;" that the repeal of prohibition had a lot to do with the selling price of malting plants.

This court may take notice of the fact that during the period between March and May 1, 1933, forty of the states had legalized two and one-half per cent beer. Obviously, such general modification of the National Prohibition Act, and the scarcity of malting plants, as is indicated by the testimony, was reflected in the value which could ordinarily

be obtained for such plants on May 1, 1933. It was proper for the board of review to take into consideration the fact that the malting plant in question was sold at private sale in July, 1933, for the sum of $400,000.

Arthur Schroeder, the assessor of incomes and supervisor of assessments of the district including Manitowoc county, testified on behalf of the city that he valued the land at $404,000, as of May 1, 1933. He testified that he took into consideration the condition of the plant, the sales value, and the record of the sale in July of said year for $400,000. It appears that Mr. Schroeder had been engaged for eight years as an assessor of incomes and supervisor of assessments—four years in the Manitowoc district and four years in the Superior district. Prior, he had served on the board of review and reassessments. His work brought him in contact with revaluing industrial plants.

Albert Blatz, Jr., a graduate of the school of engineering, University of Wisconsin, testified on behalf of the city. He said he made an examination and inspection of the taxpayer's plant at the request of the city assessor; that he had practical experience in the operation, designing, and construction of malting plants; that he was familiar with the market value of machinery and the construction cost of a building. He testified that the full value of the plant on May 1, 1933, was in excess of the amount for which it sold in July of that year. He further testified that at the time of the hearing before the board of review, there were only seventeen or eighteen malting plants in operation in the United States; that there were between fifty and sixty plants in operation upon the advent of prohibition.

Aldro Jenks, Jr., a field representative of the Wisconsin tax commission, testified that, assuming that the land was worth $24,600, the full value which could ordinarily be obtained at private sale on May 1, 1933, was $404,000. In arriving at this figure, he took into consideration the fact

that the plant sold for $400,000 in July. He made a study of the appellant's plant and that of the Rahr Malting Company, also located in the city of Manitowoc, on a comparative basis as to size, steeping capacity, physical condition, the fact that the Rahr Malting Company was a going concern doing business on May 1, 1933. That he also had access to the income tax report of the Rahr Malting Company. He also took into consideration the condition of the malting industry as of May 1st, and that the demand for malt exceeded the supply. It appears that Mr. Jenks' official work with the Wisconsin tax commission involved the appraisal of many of the large industries of the state for the purpose of determining their fair values.

The appellant's witnesses gave the following testimony:

Christ Kurth: "The value of the plant on the basis of cost less depreciation would be about $150,000 to $200,000. Of course, the anticipation for operating and making a profit on account of shortage of capacity would warrant a higher price and it did bring a higher price." That the cost of a malting plant was between thirty-five and forty cents per bushel of its annual steeping capacity. It appears that from July 7 to December 31, 1931, the Kurth Malting Company steeped seven hundred ninety-eight thousand two hundred bushels. On this basis, the annual steeping capacity would be approximately twice this amount. On Mr. Kurth's testimony of cost at forty cents per bushel, the construction cost would be in excess of $600,000. Frank L. Hague testified that the value on May 1, 1933, was about $152,000. Curt G. Joa, called as an efficiency expert, testified that the efficiency of appellant's plant was forty per cent. There is some testimony as to the estimated original cost of the plant in question being $385,000. Testimony was received of an offer made the Kurth Malting Company of Milwaukee in the spring of 1933 to construct for that company a plant having a rated capacity of a million and a quarter bushels

for the sum of $191,000. There is no testimony of the sale of any malting plant other than the sale of the plant in question in July of 1933.

The testimony shows a wide difference of opinion as to the full value which could ordinarily be obtained for the property in question at private sale on May 1, 1933. No doubt the fact that Mr. Kurth was negotiating for the purchase of the property since 1928, and finally acquired it in July, 1933, for the sum of $400,000, was persuasive with the members of the board of review in sustaining the assessment, and we think properly so; also the fact that the plant was insured for $375,000. It is vigorously contended by the appellant that unusual conditions prevailed in the malting industry as of May 1, 1933, because of the legalizing of two and one-half per cent beer, the impending repeal of national prohibition, and the demand for malt. These conditions, and the fact that this particular plant was the only one available to a prospective purchaser, are all factors to be considered by the assessor and the board of review in fixing the full value which could ordinarily be obtained at private sale on the date fixed by statute, which was May 1st.

In fixing valuation for the purpose of taxation, the taxing officers may take into account cost, depreciation, replacement value, earnings, industrial conditions, location, and sales of other similar plants, if any. *State ex rel. Flambeau Paper Co. v. Windus,* 208 Wis. 583, 587, 243 N. W. 216; *State ex rel. North Shore Development Co. v. Axtell,* 216 Wis. 153, 155, 256 N. W. 622.

In *State ex rel. Pierce v. Jodon,* 182 Wis. 645, 649, 197 N. W. 189, the court said:

"All that can be asked of assessment officers is that they act on the evidence and facts before them, honestly and without discrimination against such property. When this is done and the case is before us on appeal, we will examine the

record to ascertain *if there is any competent, credible evidence to sustain the valuations* placed upon the property by the assessing officers, and if there be such, *it is not our province to weigh the testimony to determine where the preponderance lies."*

This case has had the careful consideration of the trial court whose findings sustained the assessment and the action of the board of review. The judgment must be affirmed.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $12.50 costs, on September 14, 1937.